to be kept at the clerk's office, on the day when they are made and directed, which book shall be open at all office hours to the free inspection of the parties in any suit of equity and their solicitors." If the supreme court believed that all the books and records belonging to the court were open to the inspection of every citizen of the United States, why did they enact such a rule? Or why did they limit the right of inspection to parties or their solicitors? This rule itself is the most convincing proof that no such right as claimed by the petitioners, was supposed by the judges of the supreme court to have existed. But it is claimed by the learned counsel for the petitioners that there is a difference between suits in equity and at law; that there could hardly be a case in equity in which the government could have any interest. It is not perceived by the court upon what reason there can exist any difference in the care and custody of the records and papers in equity causes and actions at law, but learned counsel are mistaken in regard to the interest of the government in equity causes. The records of this court show numerous causes in equity in which the government of the United States is plaintiff. But it is said, if that is so, that the citizen is a party in interest, and would have a right to look into the records. In some general political sense it may be true that the citizen is a party in interest in every suit prosecuted in the name of the United States; but in a legal sense he is not such a party in interest as is contemplated by this rule.

That congress entertained the same view is abundantly shown by its acts. In 1848 it enacted a law providing that "all books in the office of the clerks of the circuit and district courts containing the docket or minutes of the judgments or decrees thereof, shall during office hours be open to the inspection of any person desiring to examine the same without any fees or charge therefor." [9 Stat. 292.] If congress believed the right already existed, why did they think it necessary to create such right by special legislation? Or if they believed it ought to exist, why did they limit the right to particular books, such only as contained the docket or minutes of the judgments or decrees? And again, by the act of February, 1875 [18 Stat. 333], congress provided "that the account and vouchers of clerks, marshals, and district attorneys shall be made in duplicate to be marked 'Original' and 'Duplicate,' and it shall be the duty of the clerk to forward the original accounts and vouchers of the officers above specified, when approved, to the proper accounting officers of the treasury, and to retain in his office the duplicate, which shall be open for public inspection at all times." If the public had the right already to inspect such papers, why did congress deem it necessary to create such a right by the passage of this act?

It is, therefore, very clear to my mind that the unlimited right of a citizen of the United States to inspect and examine all the records and papers belonging to the court does not exist. The right to examine certain records and papers does exist. It exists as to the books containing the docket or minute entries of the judgments and decrees of the court, and these the petitioners allege that they have been refused by an officer of this court. The prayer of the petition is not in accordance with this averment, and the affidavit is different from both. This petition, however, must be governed by the rules of pleading in other cases, so far as the demurrer is concerned. If the party is entitled to any part of the relief he prays for, a general demurrer must be overruled. This application for the interference of the court is based upon the allegation that the petitioners have been deprived of a right given them by the law by an officer of the court. This is denied on behalf of the officer by two members of the bar, who are officers also of the court, and who appear in this proceeding on behalf of the clerk. This is a charge which the court is interested in having examined, and the truth or falsity thereof established. The demurrer therefore will be overruled, but no order will be made until a further hearing of the matter is had before the court, when we shall finally determine whether the petitioners are entitled to the order as prayed for.

To the above opinion, BAXTER, Circuit Judge, added afterwards, concurring: "The arguments and the discussion relate to the legal rights of the citizen to inspect the public record of the courts. I do not take issue with any principle announced by the district judge in reference to the questions there involved. But in consultation we agree that this is not a case for the application of technical law. The examination proposed professes to be in the public interest. No injury can result to any one from such examination."

CINCINNATI ENQUIRER (GIBSON v.). See Cases Nos. 5,391 and 5.392.

CINCINNATI GAS-LIGHT & COKE CO. (STILWELL & BIERCE MANUF'G CO. v.). See Case No. 13,453.

CINCINNATI. H. & D. R. CO. (SMITH v.). See Case No. 13.025.

CINCINNATI, PERU & CHICAGO R. CO. (DUNHAM v.). See Case No. 4,148.

CINCINNATI. W. & Z. R. CO. (THOMPSON v.). See Case No. 13.950.

CINQUE (UNITED STATES v.). See Case No. 14,794.

## Case No. 2,720.

The CIRCASSIAN.

[See Case No. 2.727.]